FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ JUN 16 2011
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
SHANELL JAMES,

       Plaintiff,

 -against-

Y. DU, ANGEL MOTTA, HENRY J. SADOWSKI,
DR. NICOLAS, JOHN DOE #1,

       Defendants.
-----------------------------------------------------------x

**MEMORANDUM & ORDER**

08-CV-2044 (ENV) (LB)

**VITALIANO, D.J.**

 Pro se plaintiff Shanell James brings this action against five prison officials at the Metropolitan Detention Center in Brooklyn ("MDC"), where he was detained at the time the complaint was filed, asserting federal constitutional claims arising under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999 (1971). Defendants have moved to dismiss. For the reasons that follow, the motion is granted, and the complaint is dismissed for failure to exhaust administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).

**I. BACKGROUND**

 James alleges a series of constitutional violations arising from two alleged incidents in October 2007. In one, James asserts he was fondled and sexually harassed during a pat-down search by defendant Du. In the other, James claims that Du improperly disciplined him for a "trumped up" violation of possession of contraband, involving a pen.[1] Plaintiff's remaining

---

[1] Du, for his part, completed an Incident Report describing a pat-down search of James that revealed a "home made ink pen which was a contraband," followed by James reacting with hostility and obscenities. (Compl., Ex. 8.) However, even if James's version of events is truthful, the outcome here remains the same.

1

assertions focus on defendants' alleged nonresponsiveness to his complaints and requests for mental health treatment following the alleged sexual assault.

James's applications for administrative relief within the Federal Bureau of Prisons ("BOP") are central to the present inquiry. In November 2007, James approached defendants Nicolas and Motta regarding the incident. Then, "around the same time," James filed a BP-9 Request for Administrative Remedy (the exhibit submitted to the Court is undated); the BP-9 was marked "sensitive" and submitted to the BOP Northeast Regional Office pursuant to 28 C.F.R. § 542.14(d)(1). James claims that he never received a response to the "sensitive" BP-9 request he submitted to the regional office.

By letter dated December 14, 2007, James then wrote the Office of the Inspector General at the Department of Justice requesting an investigation into the alleged incidents at MDC. On or about January 11, 2008, James submitted a BP-11 Central Office Administrative Remedy Appeal in furtherance of his BP-9, to which he claimed BOP had not responded. By letter dated February 1, 2008, James also wrote the Federal Bureau of Investigation recounting the incidents at MDC and requesting an investigation.

On January 31, 2008, BOP issued a "Rejection Notice – Administrative Remedy" to James, turning down his BP-11 appeal to the central office. The notice, annexed to the complaint as exhibit 6, stated that the reason for the rejection was: "The issue you raised is not sensitive. However, we retained your request/appeal according to policy. You should file a request or appeal at the appropriate level via regular procedures." (Compl., Ex. 6.) Exhibit 6 includes a handwritten note indicating that the notice was delivered to James at MDC on February 25, 2008. (Id.) There is, however, nothing in the complaint to suggest that James filed any other forms with BOP after February 25, 2008, despite receiving this notice of an available

2

avenue of administrative relief, and, just as importantly, there is nothing in the complaint to suggest that James was in any way restricted from completing and submitting any administrative forms. So, eschewing the opportunity to exhaust his administrative remedies, James then filed the instant action on May 12, 2008, 11 weeks after receiving the BOP administrative denial and notice of other opportunities to seek administrative relief. As of October 2009, James was no longer in BOP's custody. (Doc. 34.)

## II. STANDARD OF LAW

To survive dismissal under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (U.S. 2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949, 127 S. Ct. at 1965. Plaintiffs must provide more than a "formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. A court must presume the truth of all factual allegations in the complaint for purposes of Rule 12(b)(6), but the court is not bound to accept the truth of legal conclusions couched as factual allegations. See Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 2944 (1986). Indeed, it is the factual allegations that are paramount, as "a complaint need not pin plaintiff's claim for relief to a precise legal theory," nor does it need to provide "an exposition of his legal argument." Skinner v. Switzer, 131 S. Ct. 1289, 1296 (U.S. 2011). In analyzing well-pled facts, a court will draw all reasonable inferences in favor of plaintiff. See Gorman v. Consol. Edison Corp., 488 F.3d 586, 591-92 (2d Cir. 2008). Moreover, because plaintiff here

3

proceeds pro se, his complaint must be read liberally and interpreted as raising the strongest arguments it suggests. See McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004).

## III. DISCUSSION

### A. Official Capacity Claims

To the extent that James is asserting claims against the defendants in their official capacities, those claims must be dismissed for lack of subject matter jurisdiction absent any waiver of sovereign immunity. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." FDIC v. Meyer, 510 U.S. 471, 475, 114 S. Ct. 996, 1000 (1994). Sovereign immunity extends to officers of the United States when they "act in their official capacities," Dotson v. Griesa, 398 F.3d 156, 177 (2d Cir. 2005), as such actions are "essentially a suit against the United States," Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994). There is no waiver of sovereign immunity applicable here. Accordingly, any claims against the defendants in their official capacities as BOP officers must be dismissed.

### B. Individual Capacity Claims

Even against defendants in their individual capacities, plaintiff's claims must be dismissed. Bivens claims against federal officers acting in their individual capacities are not barred by sovereign immunity. See Robinson, 21 F.3d at 510. Nonetheless, federal prisoners suing under Bivens must still satisfy PLRA's administrative exhaustion requirements. Porter v. Nussle, 534 U.S. 516, 524, 122 S. Ct. 983, 988 (2002). PLRA provides that "[n]o action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has made it plain that "PLRA's exhaustion requirement

4

applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter, 534 U.S. at 532, 122 S. Ct. at 992.

BOP has a four-step inmate grievance system for federal prisoners, set forth at 28 C.F.R. §§ 542.10-542.16, which encompasses, in order: (1) informal reporting to prison staff, (2) Request for Administrative Remedy (form BP-9), typically filed with the warden of the facility at which the prisoner is confined, (3) Regional Administrative Remedy Appeal (form BP-10) with the appropriate BOP Regional Director, and (4) Central Office Administrative Remedy Appeal (form BP-11) with the general counsel of BOP. See, e.g., Cuello v. Lindsay, No. 09-CV-4525, 2011 WL 1134711, at *7-8 (E.D.N.Y. Mar. 25, 2011). There are also set deadlines by which these steps must be taken. The BP-9 must be filed within 20 calendar days of the original incident, and this 20-day period includes the time during which the informal reporting to prison staff must occur. 28 C.F.R. § 542.14(a); Cuello, 2011 WL 1134711, at *7. The BP-10 must be submitted "within 20 calendar days of the date the Warden signed the response" to the BP-9. 28 C.F.R. § 542.15(a). Then the prisoner may file a BP-11 within 30 calendar days of the Regional Director's signed response to the BP-10. Id. Moreover, under this system, "[i]f the inmate does not receive a response within the time allotted for a reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

The BOP regulations also provide a special procedure for "sensitive" requests:

> If the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution, the inmate may submit the [BP-9] Request directly to the appropriate Regional Director. The inmate shall clearly mark "Sensitive" upon the [BP-9] Request and explain, in writing, the reason for not submitting the Request at the institution. If the Regional Administrative Remedy Coordinator agrees that the Request is sensitive, the Request shall be accepted. Otherwise, the Request will not be accepted, and the inmate shall be advised in writing of that determination,

5

> without a return of the Request. The inmate may pursue the matter by submitting an Administrative Remedy Request locally to the Warden. The Warden shall allow a reasonable extension of time for such a resubmission.

28 C.F.R. § 542.14(d)(1). Effectively, the "sensitive" request provision allows a prisoner to skip the first two steps of the BOP grievance process by filing a BP-9 form directly with the Regional Director.

Here, James spoke informally with prison staff and then filed a "sensitive" BP-9 directly with the Regional Director, in accordance with BOP regulations. He claims he never received a response, and, under 28 C.F.R. § 542.18, that lack of a response is considered a denial for administrative purposes. James subsequently filed a BP-11, effectively in answer to the Regional Director's apparent silent denial of his "sensitive" BP-9. In any case, assuming a valid appeal by James had been started, the appeals process was short-circuited when he received his rejection notice, which specifically informed him: "The issue you raised is not sensitive. However, we retained your request/appeal according to policy. You should file a request or appeal at the appropriate level via regular procedures." (Compl., Ex. 6.) BOP's rejection was entirely in line with 28 C.F.R. § 542.14(d)(1), which provides that if the "sensitive" BP-9 request is not accepted, "the inmate shall be advised in writing of that determination, without a return of the Request" and that then "[t]he inmate may pursue the matter by submitting an Administrative Remedy Request locally to the Warden." Pared to the core, the notice advised James that he had a live administrative remedy to pursue. Yet, crucially, he never filed a local BP-9 request at MDC. In fact, he made no further filings within the BOP grievance system.

Plaintiff's failure to heed BOP's instructions after the procedural rejection of his initial requests constitutes a failure to exhaust his administrative remedies. As the Supreme Court has held, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical

6

procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford v. Ngo, 548 U.S. 81, 90-91, 126 S. Ct. 2378, 2386 (2006); see also, e.g., Crawford v. Craig, No. 06-CV-521, 2008 WL 4287556, at *4-6 (N.D.N.Y. Aug. 21, 2008) (dismissing Bivens claims due to non-exhaustion of administrative remedies under PLRA after plaintiff's "sensitive" BP-9 and BP-11 requests were rejected and plaintiff took no further administrative action). Plaintiff's papers in opposition to the instant motion provide neither insight nor explanation for his failure to continue his pursuit of an administrative remedy.

Nor does James advance facts suggesting any excuse for his omission, much less an excuse that satisfies the three-part standard first articulated by the Second Circuit in Hemphill v. New York, 380 F.3d 680 (2d Cir. 2004). Hemphill requires an analysis of the following factors: (1) "whether administrative remedies were in fact available to the prisoner," (2) whether defendants' invocation of the nonexhaustion defense has been ab rogated by failure to preserve it, or by estoppel, and (3) "whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements." Macias v. Zenk, 495 F.3d 37, 41 (2d Cir. 2007) (quoting Hemphill, 380 F.3d at 686).

None of the Hemphill factors are implicated here. First, there is nothing in the record to suggest that BOP's administrative remedies were not, in fact, available to James. To the contrary, James clearly availed himself of the BOP administrative process, filing numerous forms as well as other letters, and speaking to a number of officials at MDC. Yet when faced with the written notice of rejection of his BP-11 request and having received its instruction to "file a request or appeal at the appropriate level via regular procedures," James failed to do so. Second, there is no indication that defendants have forfeited their right to raise a nonexhaustion

7

defense. Defendants raised the exhaustion issue in their first response, and there is no allegation that any of the defendants took any action pertinent to James's ability to file BOP administrative requests. Third, James has not alleged any special circumstances that could justify his failure to comply with the BOP administrative process for prisoner grievances. Indeed, James has never provided any explanation at all, including in his response to the instant motion, as to why he did not follow the instructions contained in the rejection of his BP-11 request.

Further, as for plaintiff's allegations of inadequate mental health care and lack of responsiveness to his complaints, he makes no allegation that he ever filed any BOP forms concerning them. Without even beginning the prescribed BOP administrative process for prisoner grievances, James's claims against Motta, Sadowski, and Nicolas are lost at the gate. See Woodford, 548 U.S. at 90-91, 126 S. Ct. at 2385-2386.

## IV. CONCLUSION

For the foregoing reasons, the motion to dismiss is granted, and plaintiff's complaint is dismissed with prejudice. Given that plaintiff failed to exhaust his administrative remedies during the two and a half months between the BOP rejection of his BP-11 request in February 2008 and his commencement of the instant action in May 2008 — and given that he is no longer in BOP custody and thus further BOP remedies are no longer available — dismissal with prejudice is proper. See Berry v. Kerik, 366 F.3d 85, 86 (2d Cir. 2004).

The Clerk of Court is directed to enter judgment and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
June 14, 2011

ERIC N. VITALIANO
United States District Judge